**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETS
EASTERN DIVISION**

| | |
|---|---|
| **PORTUS SINGAPORE PTE LTD & PORTUS PTY LTD,**<br>      **Plaintiff,**<br><br>**v.**<br><br>**LUTRON ELECTRONICS CO., INC.,**<br>      **Defendant** | **Civil Action No.**<br><br><br>**JURY TRIAL DEMANDED** |

**PLAINTIFFS' ORIGINAL COMPLAINT FOR PATENT INFRINGEMENT**

PORTUS SINGAPORE PTE LTD & PORTUS PTY LTD (collectively "Plaintiff" or "Portus") file this Original Complaint and demand for jury trial seeking relief for infringement of the claims of U.S. Patent No. 8,914,526 (the "'526 patent") and U.S. Patent No. 9,961,097 (the "'097 patent") (collectively, the "Patents-in-Suit") by Defendant Lutron Electronics Co., Inc. ("Lutron" or "Defendant") during the enforceable terms of the Patents-in-Suit and within the applicable damages period.

**I. THE PARTIES**

1. Plaintiff PORTUS SINGAPORE PTE LTD is a Singapore company with its principal place of business located at 6 Shenton Way, #41-01 OUE Downtown, Singapore 068809.

2. Plaintiff PORTUS PTY LTD is an Australian company with its principal place of business at C/-JGS Property Level 15, 60 Margaret Street, Sydney NSW 2000, Australia.

3. On information and belief, Defendant Lutron Electronics Co., Inc. is a corporation organized and existing under the laws of the Commonwealth of Pennsylvania. Defendant maintains a headquarters at 7200 Suter Road, Coopersburg, Pennsylvania 18036-1299, and

1

maintains a regular and established place of business in the District of Massachusetts, including at least 1 Beacon Street, 13th Floor, Boston, Massachusetts 02108. On information and belief, the Boston location includes Lutron office, engineering, sales, support, customer-facing, design, experience-center, training, product, lighting-control, smart-home, and/or commercial operations for Lutron products and services in Massachusetts. On information and belief, Defendant sells and offers to sell products and services throughout Massachusetts, including in this judicial district, and introduces products and services that perform infringing methods or processes into the stream of commerce knowing that they would be sold in Massachusetts and this judicial district. Defendant can be served at its Pennsylvania registered address at 7200 SUTER RD, COOPERSBURG, Pennsylvania 18036-1249, at Defendant's Massachusetts address, at Defendant's headquarters, or anywhere Defendant may be found.

4. On information and belief, Defendant directly and/or indirectly develops, designs, manufactures, distributes, markets, offers to sell, sells, operates, provides, maintains, and/or supports infringing products, applications, cloud services, account systems, lighting-control systems, shade-control systems, thermostat-control systems, smart-home systems, remote-monitoring systems, Lutron Connect systems, Lutron Connect Portal systems, HomeWorks QS systems, RadioRA 2 systems, RadioRA 3 systems, and related services in the United States, including in this District, and otherwise has directed infringing activities to this District in connection with its products and services.

## II. JURISDICTION AND VENUE

5. This civil action arises under the Patent Laws of the United States, 35 U.S.C. § 1 et seq., including without limitation 35 U.S.C. §§ 271, 281, 283, 284, and 285 based on Defendant's unauthorized commercial making, using, selling, offering for sale, importing, operating, providing,

and supporting of the Accused Instrumentalities in the United States during the enforceable terms of the Patents-in-Suit. This Court has subject matter jurisdiction under, inter alia, 28 U.S.C. §§ 1331 and 1338(a).

6. This United States District Court for the District of Massachusetts has general and specific personal jurisdiction over Defendant because, directly and through intermediaries, Defendant has committed acts within the District giving rise to this action and is present in, transacts business in, and conducts business with residents of this District and the Commonwealth of Massachusetts.

7. Plaintiff's causes of action arise, at least in part, from Defendant's contacts with and activities in this District and the Commonwealth of Massachusetts.

8. Defendant has committed acts of infringement within this District and the Commonwealth of Massachusetts by making, using, selling, offering for sale, importing, distributing, providing, operating, and/or supporting the Accused Instrumentalities, including without limitation Lutron HomeWorks QS systems, RadioRA 2 systems, RadioRA 3 systems, Lutron Connect mobile applications, Lutron Connect App services, Lutron Connect Portal services, Lutron cloud services, Lutron account and authentication services, Lutron Cloud Connect/Places services, Lutron system-monitor tools, Lutron Connect Bridges, RadioRA main repeaters, HomeWorks QS processors, Lutron touch screens, Athena touch screens, keypads, dimmers, switches, sensors, Clear Connect RF devices, thermostats, HVAC controllers, lighting-control devices, shade-control devices, remote-access servers and web servers, and related hardware, software, and network infrastructure configured to remotely monitor and/or control devices located in user premises networks.

9. This Court has personal jurisdiction over Defendant because Defendant has minimum

3

contacts with this forum as a result of business regularly conducted within the Commonwealth of Massachusetts and within this District, and, on information and belief, specifically as a result of, at least, committing acts of patent infringement within Massachusetts and this District. Defendant provides products and services accused of infringement to residents of this District that Defendant knew and intended would be used within this District, solicits business from residents of this District, and derives substantial revenue from goods and services provided to residents of this District and Massachusetts.

10. This Court also has personal jurisdiction over Defendant because, in addition to Defendant's regular and established place of business in Boston, Massachusetts, Defendant has made the Accused Instrumentalities available within this judicial District and has advertised to and solicited residents within the District.

11. The amount in controversy exceeds $75,000 exclusive of interest and costs.

12. Venue is proper in this Court under 28 U.S.C. § 1400(b). Defendant is not incorporated in Massachusetts for purposes of § 1400(b), but, on information and belief, Defendant has committed acts of infringement in this District and has a regular and established place of business in this District, including at least 1 Beacon Street, 13th Floor, Boston, Massachusetts 02108. Defendant also advertises, markets, sells, offers to sell, distributes, provides, and supports the Accused Instrumentalities in this District.

### III. THE PATENTS-IN-SUIT

13. On December 16, 2014, the '526 patent, entitled "LOCAL AND REMOTE MONITORING USING A STANDARD WEB BROWSER," was duly and legally issued by the United States Patent and Trademark Office. The face of the '526 patent identifies a PCT filing date of December 17, 1999 and a patent term adjustment of 173 days. Accordingly, absent any earlier

terminal disclaimer, lapse, or other enforceability limitation, the '526 patent expired no later than June 7, 2020. Plaintiff does not seek injunctive relief or damages for any alleged infringement occurring after expiration of the '526 patent. A true and correct copy of the '526 patent is attached hereto as Exhibit A.

14. On May 1, 2018, the '097 patent, entitled "SYSTEM FOR REMOTE ACCESS OF A USER PREMISES," was duly and legally issued by the United States Patent and Trademark Office. The face of the '097 patent identifies U.S. Patent Application No. 14/536,784, filed November 10, 2014, as a continuation of U.S. Patent Application No. 09/868,417, filed as PCT/AU99/01128 on December 17, 1999, and further states that the '097 patent is subject to a terminal disclaimer. Plaintiff asserts the '097 patent only for alleged infringement during its enforceable term and within the applicable damages period, and does not seek injunctive relief or damages for any alleged infringement occurring after expiration of the '097 patent. A true and correct copy of the '097 patent is attached hereto as Exhibit C.

15. Portus owns the entire right, title, and interest in and to the Patents-in-Suit by assignment, including the right to bring this suit and recover damages for past infringement occurring during the enforceable terms of the Patents-in-Suit, subject to the applicable limitations period under 35 U.S.C. § 286 and any other applicable damages limitations. Defendant was not licensed to the Patents-in-Suit, either expressly or implicitly, and did not enjoy or benefit from any rights in or to the Patents-in-Suit during their enforceable terms.

16. The Patents-in-Suit are presumed valid under 35 U.S.C. § 282 and claim patent-eligible subject matter.

## IV. TECHNOLOGY OF THE PATENTS-IN-SUIT

17. The Patents-in-Suit are directed to specific technological solutions for local and remote

monitoring and control of user-premises systems through standard browser-access and external network architectures. The patents explain that users of advanced automation, security, lighting-control, shade-control, energy-management, HVAC, access-control, and home-control systems commonly need both local and remote access, but conventional systems relied on cumbersome telephone-code or voice-command interfaces and did not provide a geographically independent standard interface that was universally accessible and not platform or hardware dependent. Ex. A, 1:10-56; Ex. C, 1:16-2:42.

18. The specifications identify concrete network-access problems in then-existing systems. Remote monitoring and control systems either assumed that the site to be controlled was already actively connected to the Internet, required technically burdensome manual connection steps, or required direct telephone access that could be expensive and impractical for geographically remote users. Ex. A, 1:50-2:8; Ex. C, 2:40-64. The patents further identify surveillance, alarm-data, access-control, premises-control, and remote interrogation problems, including that data could remain unprotected at the premises and that conventional systems did not provide practical remote monitoring through a standard, location-independent interface. Ex. A, 2:9-31; Ex. C, 2:15-42.

19. The claimed inventions are not the abstract idea of remote monitoring, lighting control, shade control, thermostat control, home automation, energy management, comfort control, security control, or presenting information. They recite particular arrangements of hardware processing circuitry, external first networks, user-premises networks, access browser modules, communications servers, connection gateways, authentication or authorization data, URL-based access, creation of network communications sessions, web-server/browser interactions, and serving of information from user-premises devices. See, e.g., Ex. A, claim 57; Ex. C, claim 1.

20. The specifications describe concrete architectures that improve computer-network

functionality. A browser accesses an extranet located outside the home environment; a communications server in that extranet interconnects on demand with a selected connection gateway in a predetermined home environment; and the selected gateway controls and/or monitors devices in the home environment. Ex. A, Abstract; 2:34-3:4; Ex. C, Abstract; 2:44-3:8. The external network may be implemented as a virtual private network across an Internet substrate, and when a customer connects to the home, the home effectively appears as a website with devices accessible for monitoring or control. Id.

21. The claimed arrangements provide technical benefits and non-conventional features, including separating the external network and communications server from user-premises networks, using authorization or authentication data to identify the particular premises network and gateway the user may access, establishing temporary communications sessions on demand, using web-server/browser interactions to provide seamless remote access, and allowing monitoring/control of devices without requiring the user to manually establish a direct technical connection to the premises network. Ex. A, claim 57; Ex. C, claim 1.

22. The patents further disclose concrete structures and operations, including a provider extranet, distributed storage, distributed databases, communications servers, service nodes, Internet access devices, telecommunications networks, premises gateways, premises network terminals, appliances, sensors, control terminals, user-premises network protocol stacks, HTTP server functionality, TCP/IP protocol stacks, device drivers, and physical interfaces. Ex. A, Figs. 1-6; Ex. C, Figs. 1-6.

23. The Patents-in-Suit therefore claim specific improvements to computer-network access and remote user-premises monitoring/control technology, not merely an instruction to apply a generic business practice on a computer. The claims are directed to particular network

architectures and ordered combinations that solve problems rooted in computer networking, remote access, authentication, and gateway-mediated user-premises device control.

## V. ACCUSED INSTRUMENTALITIES

24. The terms "Accused Instrumentalities" and "Accused Products" refer to, by way of example and without limitation, Defendant's Lutron HomeWorks QS systems, RadioRA 2 systems, RadioRA 3 systems, Lutron Connect mobile applications, Lutron Connect App services, Lutron Connect Portal services, Lutron cloud services, Lutron Cloud Connect/Places services, Lutron account and authorization systems, authentication systems, remote-access servers and web servers, Lutron Connect Bridges, RadioRA main repeaters, HomeWorks QS processors, HomeWorks QS interfaces, Lutron touch screens, Athena touch screens, tabletop keypads, keypads, dimmers, switches, sensors, Clear Connect RF devices, thermostats, HVAC controllers, lighting-control devices, shade-control devices, Palladiom devices, system-monitor tools, installer/dealer remote-support tools, related user devices configured to operate with Lutron remote monitoring and control systems, and all other substantially similar systems, components, applications, services, and instrumentalities used to remotely monitor and/or control devices located in user premises networks during the enforceable terms of the Patents-in-Suit. Plaintiff's infringement allegations are directed to accused making, using, selling, offering for sale, importing, operating, providing, and/or supporting of those Accused Instrumentalities during the enforceable terms of the Patents-in-Suit and within the applicable damages period.

25. The Accused Instrumentalities include at least one accused instrumentality group: Lutron HomeWorks QS, RadioRA 2, RadioRA 3, Lutron Connect, and Lutron cloud remote-access systems, including Lutron Connect Bridges, RadioRA main repeaters, HomeWorks QS processors, Lutron Connect applications, Lutron Connect Portal services, Lutron Cloud

Connect/Places services, system-monitor tools, Lutron account, authentication, authorization, notification, dealer-support, remote-programming, and remote-access services, and connected premises devices such as dimmers, switches, keypads, lighting devices, shades, thermostats, HVAC controllers, sensors, Clear Connect RF devices, and other networked components. Exhibit B supports Plaintiff's allegations that the Accused Instrumentalities infringe at least claim 57 of the '526 patent. Exhibit D supports Plaintiff's allegations that the Accused Instrumentalities infringe at least claim 1 of the '097 patent.

**A. Lutron HomeWorks QS, RadioRA, Connect, and Cloud Systems - '526 Patent**

26. Lutron provides and supports HomeWorks QS, RadioRA 2, RadioRA 3, Lutron Connect, Lutron Connect Portal, Cloud Connect/Places, and related Lutron cloud remote-access systems deployed at user premises and connected to the Lutron Connect application, Lutron Connect Portal, and Lutron cloud services for remote monitoring and/or control. Exhibit B identifies the accused system as including HomeWorks QS/RadioRA 2 deployed within a home or user premises and connected to Lutron Connect app services for remote monitoring/control of user-premises networks. Ex. B at 1-4.

27. For purposes of Plaintiff's infringement allegations under the '526 patent, Exhibit B identifies the first network as the Lutron cloud services network; the first arrangement of processing circuitry as Lutron cloud services, Lutron Connect Portal, and backend processing circuitry programmed to manage accounts, device registration, device-state synchronization, remote access, and cloud/Places functionality; the user access browser device as smartphones, tablets, touch screens, tablet keypads, or other user devices running the Lutron Connect app, Lutron Connect Portal, access-browser functionality, or a browser-access interface; and the second arrangements of processing circuitry as Lutron Connect Bridges, RadioRA main repeaters,

HomeWorks QS processors, RadioRA/HomeWorks systems, Clear Connect RF devices, dimmers, switches, thermostats, sensors, shades, lighting devices, and related hardware deployed in user premises networks. Ex. B at 1-9.

28. The Lutron HomeWorks QS, RadioRA, Connect, and cloud systems practice the preamble and limitations [57A] and [57B] of claim 57 because they provide a system for remote access of user premises networks located in respective user premises; include a first external network with programmed processing circuitry that controls network access; include a hardware user access browser device; and include plural second arrangements of processing circuitry located in respective user premises networks. Exhibit B identifies Lutron cloud services external to the premises, Lutron Connect app or portal access from smartphones/tablets/touch screens, and premises-based Lutron Connect Bridge, RadioRA, and HomeWorks QS systems with embedded processors and network interfaces connected to home LAN, Wi-Fi, or Clear Connect RF devices. Ex. B at 1-9.

29. The Lutron HomeWorks QS, RadioRA, Connect, and cloud systems practice limitation [57C] because Lutron cloud services and Lutron Connect backend services are adapted by programming to initiate or cause the establishment of network connections with selected Lutron Connect Bridges, RadioRA main repeaters, HomeWorks QS processors, connected lighting devices, shade devices, thermostats, HVAC controllers, sensors, and other premises devices when an authorized user logs in, registers a place or device, selects a home, requests remote monitoring/control, changes a light or shade state, edits schedules, or accesses system-monitor information through the Lutron Connect app, Lutron Connect Portal, or related remote-access services. Exhibit B identifies that, upon authenticated remote access, Lutron cloud/portal services establish network communications with the added or registered device over the Internet/home-

network path and Clear Connect technology to exchange control commands, schedules, device-state information, and status/usage information. Ex. B at 16-17.

30. The Lutron HomeWorks QS, RadioRA, Connect, and cloud systems practice limitation [57D] because the Lutron Connect app, Lutron Connect Portal, system-monitor tools, touch screens, and related network-access functionality operate as access-browser functionality for locating and examining information on the Lutron first network and on user premises networks through URL/URI-addressed resources, HTTP/HTTPS endpoints, authenticated web services, and user selections that cause the client to access predetermined network locations. Exhibit B identifies that the Lutron Connect app and web-based Lutron Connect Portal use URL/URI-addressed resources and that user selections within the interface, including device selections, lighting selections, thermostat selections, schedule screens, or room/place selections, cause the client to access predetermined locations corresponding to Lutron services/resources. Ex. B at 18.

31. The Lutron HomeWorks QS, RadioRA, Connect, and cloud systems practice limitations [57E] and [57F] because the Lutron first circuitry arrangement receives authentication and/or authorization data from the user device, including Lutron account credentials, Place/account identifiers, device-registration data, bridge identifiers, project data, authorization tokens, session credentials, and/or user-role permissions, and uses that data to determine which premises network, Lutron Connect Bridge, RadioRA system, HomeWorks QS system, or set of networked devices the user is authorized to access. Upon verification of that authentication data, Lutron cloud services determine the selected premises, registered device, or Place to be accessed and serve device status, scene, schedule, lighting, shade, thermostat, HVAC, sensor, or system-monitor information to the user device. Ex. B at 18-23.

32. The Lutron HomeWorks QS, RadioRA, Connect, and cloud systems practice limitation

11

[57G] because, upon authorized access, Lutron cloud services establish network communications with the specific registered premises device state and/or Lutron Connect Bridge, RadioRA, or HomeWorks QS system to access device state, stored data, status information, and/or to deliver commands or updates. Exhibit B identifies these interactions as HTTPS/TLS request/response sessions and/or cloud-synchronization sessions that temporarily interconnect Lutron cloud services and the specific user premises network during the access/control transaction. Ex. B at 24.

33. To the extent Lutron contends that an end user, dealer, installer, mobile device, router, Lutron Connect Bridge, RadioRA system, HomeWorks QS processor, or other third-party component performs any portion of the accused operation, Lutron nevertheless conditions participation in and benefit from the accused remote-access system on using Lutron's prescribed hardware, cloud services, accounts, Lutron Connect app, Lutron Connect Portal, Lutron remote-access configuration, Lutron authentication systems, Lutron cloud endpoints, and Lutron-designed setup and use flows. Lutron establishes the manner and timing of performance by designing, providing, hosting, authenticating, authorizing, updating, supporting, and controlling the accused Lutron cloud services, Lutron Connect services, account system, Place registration, remote-access services, and app/portal interfaces that coordinate communications with the Lutron premises gateway devices. Those facts support attribution of the relevant acts to Lutron and blunt any divided-infringement defense.

**B. Lutron HomeWorks QS, RadioRA, Connect, and Cloud Systems - '097 Patent**

34. Lutron also infringed at least claim 1 of the '097 patent through the same Lutron HomeWorks QS, RadioRA 2, RadioRA 3, Lutron Connect, Lutron Connect Portal, Lutron Connect Bridge, Lutron cloud, Cloud Connect/Places, and related remote-access systems. Exhibit D identifies the accused system as including HomeWorks QS/RadioRA 2 deployed within a home

or user premises and connected to Lutron Connect app services for remote monitoring/control of user-premises networks. Ex. D at 1-6.

35. For purposes of Plaintiff's infringement allegations under the '097 patent, Exhibit D identifies the first hardware processing circuitry as a user's phone, tablet, touch screen, tabletop keypad, or other device running the Lutron Connect app, Lutron Connect Portal, access browser, or access browser module; the second hardware processing circuitry as Lutron cloud services located in the Lutron cloud services network; and the connection gateway as the Lutron Connect Bridge and/or RadioRA 2/HomeWorks QS system located in and part of the local network of the user premises. Ex. D at 1-8.

36. The Lutron HomeWorks QS, RadioRA, Connect, and cloud systems practice the preamble and limitations [1A] and [1B] of claim 1 because they provide a system for remote access of a user premises; include first hardware processing circuitry running an access browser module; include second hardware processing circuitry located in a first network; and include a connection gateway located in, and part of, a local network of the user premises. Exhibit D identifies the Lutron cloud server network, the user phone/tablet/Lutron Connect app or touch-screen access module, and the Lutron Connect Bridge and RadioRA/HomeWorks QS system as a gateway between Lutron cloud services and premises devices such as dimmers, keypads, thermostats, shades, lighting devices, and Clear Connect RF devices. Ex. D at 1-8.

37. The Lutron HomeWorks QS, RadioRA, Connect, and cloud systems practice limitations [1C] and [1D] because the second hardware processing circuitry—Lutron cloud services and Lutron cloud servers—is external to the user premises, is accessible through the Lutron Connect app, Lutron Connect Portal, touch screen, or access-browser module, and communicates on demand with the Lutron Connect Bridge, RadioRA system, or HomeWorks QS

13

system. The connection gateway is integrated with or communicatively coupled to networked components of the local user-premises network, including Clear Connect RF devices, dimmers, switches, keypads, thermostats, HVAC controllers, sensors, lighting devices, and shade devices. Ex. D at 14-15.

38. The Lutron HomeWorks QS, RadioRA, Connect, and cloud systems practice limitation [1E] because the accused system is configured such that user input through a URL, URI, deep link, endpoint, app-interface selection, Lutron Connect app screen, Lutron Connect Portal screen, touch-screen command, Place selection, device selection, or other access-browser command causes the first hardware processing circuitry, using the access browser module, to access an address on the Lutron first network. The Lutron cloud server then responsively serves information regarding at least one networked component of the local network, including light state, shade state, dimmer state, scene state, thermostat state, HVAC state, schedule data, room data, system-monitor information, event/status information, and settings information, and obtains that information from the Lutron Connect Bridge, RadioRA system, or HomeWorks QS gateway without a direct communicative coupling between the Lutron cloud server and every Clear Connect RF device or local networked component. Ex. D at 15-18.

39. The Lutron HomeWorks QS, RadioRA, Connect, and cloud systems practice limitation [1F] because the sequence includes the first hardware processing circuitry transmitting authentication data to the second hardware processing circuitry. Such authentication data includes Lutron account credentials, remote-access account information, Place identifiers, registered-device identifiers, bridge identifiers, project or system identifiers, session tokens, authorization tokens, and/or user-role information indicating authority to access at least one networked component of the local network. Transmission of that authentication data is required before Lutron

14

cloud services serve premises-device information or allow remote monitoring/control through the Lutron Connect app or Lutron Connect Portal. Ex. D at 18-21.

40. The Lutron HomeWorks QS, RadioRA, Connect, and cloud systems practice limitations [1G], [1H], and [1I] because the system supports a plurality of user premises, each with its own Lutron Connect Bridge, RadioRA system, HomeWorks QS system, connection gateway, or Place; Lutron cloud services are configured to connect to such gateways; Lutron cloud services determine which local network, registered Place, gateway, or premises system the authentication data indicates authority to access; and, upon verification of the authentication data, Lutron cloud services establish a new communication session between the user device and the gateway of the respective local network. Exhibit D identifies that multiple homes or residences can be added to a Lutron Connect account and that Lutron cloud services determine the device or premises network a user is authorized to access. Ex. D at 21-24.

41. The Lutron HomeWorks QS, RadioRA, Connect, and cloud systems practice limitations [1J] and [1K] because Lutron cloud services provide previously stored selected information regarding local networked components to the access browser module after authentication, including information about device states, system status, place/home information, scenes, schedules, lighting status, shade status, thermostat status, remote-access status, and system-monitor data. The authority to access the local networked component by transmitting authentication data also provides authority to access and review the previously stored selected information in the Lutron first network via the Lutron Connect app, Lutron Connect Portal, or other access browser module. Ex. D at 24-26.

42. To the extent Lutron contends that the user, dealer, installer, mobile device, local router, Lutron Connect Bridge, RadioRA system, HomeWorks QS processor, or premises device performs

15

a step that Lutron itself does not perform, Lutron still controls and directs the accused remote-access sequence. Lutron supplies and controls the cloud services, account system, authentication flow, Place association, Lutron Connect app, Lutron Connect Portal, system-monitor services, service endpoints, instructions, and compatibility requirements that must be used to obtain the benefit of remote access. Users and installers do not independently choose the accused architecture; rather, they follow Lutron's prescribed registration, authentication, network, and remote-access process. Lutron's operation, control, and benefit from those steps support attribution and defeat any divided-infringement defense.

## VI. COUNT I - INFRINGEMENT OF U.S. PATENT NO. 8,914,526

43. Plaintiff incorporates by reference the allegations in the preceding paragraphs as if fully set forth herein.

44. Defendant directly infringed, literally and/or under the doctrine of equivalents, at least claim 57 of the '526 patent by making, using, selling, offering to sell, importing, providing, operating, testing, and/or supporting the Accused Instrumentalities in the United States during the enforceable term of the '526 patent and within the applicable damages period. The Accused Instrumentalities contain each and every element of at least claim 57, as set forth above and in Exhibit B.

45. Defendant's infringement of the '526 patent has injured Plaintiff, and Plaintiff is entitled to recover damages adequate to compensate for Defendant's infringement during the enforceable term of the '526 patent, but in no event less than a reasonable royalty, together with interest and costs as fixed by the Court under 35 U.S.C. § 284, subject to all applicable damages limitations, including 35 U.S.C. § 286 and any marking or notice limitations.

46. Plaintiff does not seek injunctive relief or damages for infringement occurring after

expiration of the '526 patent.

## VII. COUNT II - INFRINGEMENT OF U.S. PATENT NO. 9,961,097

47. Plaintiff incorporates by reference the allegations in the preceding paragraphs as if fully set forth herein.

48. Defendant directly infringed, literally and/or under the doctrine of equivalents, at least claim 1 of the '097 patent by making, using, selling, offering to sell, importing, providing, operating, testing, and/or supporting the Accused Instrumentalities in the United States during the enforceable term of the '097 patent and within the applicable damages period. The Accused Instrumentalities contain each and every element of at least claim 1, as set forth above and in Exhibit D.

49. Defendant's infringement of the '097 patent has injured Plaintiff, and Plaintiff is entitled to recover damages adequate to compensate for Defendant's infringement during the enforceable term of the '097 patent, but in no event less than a reasonable royalty, together with interest and costs as fixed by the Court under 35 U.S.C. § 284, subject to all applicable damages limitations, including 35 U.S.C. § 286 and any marking or notice limitations.

50. Plaintiff does not seek injunctive relief or damages for infringement occurring after expiration of the '097 patent.

## VIII. CONDITIONS PRECEDENT

51. Plaintiff has never sold a product. Upon information and belief, no Plaintiff predecessor-in-interest has ever sold a product. Neither Plaintiff nor any licensee made or sold a patented article. Plaintiff is a non-practicing entity, with no products to mark. Plaintiff has pled all statutory requirements to obtain pre-suit damages. Further, all conditions precedent to recovery are met. Under the rule of reason analysis, Plaintiff has taken reasonable steps to ensure marking

17

by any licensee producing a patented article.

52. Plaintiff and its predecessors-in-interest have entered into settlement licenses with several defendant entities, but none of the settlement licenses were to produce a patented article, for or under Plaintiff's patents. Duties of confidentiality prevent disclosure of settlement licenses and their terms in this pleading, but discovery will show that Plaintiff and its predecessors-in-interest have substantially complied with 35 U.S.C. § 287(a). Furthermore, each of the defendant entities in the settlement licenses did not agree that it was infringing any of Plaintiff's patents, including the Patents-in-Suit, and thus was not entering into the settlement license to produce a patented article for Plaintiff or under its patents. Further, to the extent necessary, Plaintiff will limit its claims of infringement to method or system-use damages for which no marking requirement applies, and/or will show that any marking obligation was satisfied or inapplicable.

53. To the extent Defendant identifies an alleged unmarked product produced for Plaintiff or under Plaintiff's patents, Plaintiff will develop evidence in discovery to show that the alleged unmarked product does not practice the Patents-in-Suit and/or that Plaintiff has substantially complied with the marking statute. Defendant has not identified any alleged patented article for which § 287(a) would apply. Further, Defendant has not alleged any defendant entity produced a patented article under authority from Plaintiff.

54. The policy of § 287 serves three related purposes: (1) helping to avoid innocent infringement; (2) encouraging patentees to give public notice that an article is patented; and (3) aiding the public to identify whether an article is patented. These policy considerations are advanced when parties are allowed to freely settle cases without admitting infringement and thus do not require marking. All settlement licenses were to end litigation and thus the policies of § 287 are not violated. Such a result is further warranted by 35 U.S.C. § 286, which allows for recovery

18

of damages for six years prior to the filing of the complaint, subject to the expiration and other limitations stated herein.

55. For each previous settlement license, Plaintiff understood that (1) the settlement license was the end of litigation between the defendant entity and Plaintiff and was not a license where the defendant entity was looking to sell a product under any of Plaintiff's patents; (2) the settlement license was entered into to terminate litigation and prevent future litigation between Plaintiff and the defendant entity for patent infringement; (3) the defendant entity did not believe it produced any product that could be considered a patented article under 35 U.S.C. § 287; and (4) Plaintiff believes it has taken reasonable steps to ensure compliance with 35 U.S.C. § 287 for each prior settlement license.

56. Each settlement license that was entered into between a defendant entity and Plaintiff was negotiated in the face of continued litigation and, while Plaintiff believed there was infringement, no defendant entity agreed that it was infringing. Thus, each prior settlement license reflected a desire to end litigation and as such the policies of § 287 are not violated.

57. For any prior settlement, the settling defendant was not licensed to make and sell infringing products in the future, thus the marking statute imposes no obligation on Plaintiff to make an effort to require a prior settling defendant to mark products Plaintiff had accused of infringement. To the extent necessary, Plaintiff will develop evidence in discovery showing that no prior settlement license required or authorized future manufacture or sale of a patented article under the Patents-in-Suit.

## IX. PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in Plaintiff's favor and against Defendant as follows:

19

a. Enter judgment that Defendant has infringed one or more claims of the Patents-in-Suit during the enforceable terms of the Patents-in-Suit;

b. Award Plaintiff damages adequate to compensate for Defendant's infringement during the enforceable terms of the Patents-in-Suit and within the applicable damages period, but in no event less than a reasonable royalty, together with pre-judgment and post-judgment interest and costs under 35 U.S.C. § 284;

c. Award Plaintiff supplemental damages for any continuing damages period occurring before expiration of the asserted patent rights and before final judgment, to the extent permitted by law;

d. Declare this case exceptional under 35 U.S.C. § 285 and award Plaintiff its reasonable attorneys' fees, expenses, and costs to the extent permitted by law;

e. Award Plaintiff such other and further relief as the Court deems just and proper.

## X. DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury on all issues so triable.

DATED: June 5, 2026                    Respectfully submitted,

*/s/ Derek H. DePetrillo*
Derek H. DePetrillo, BBO: 670303
Consumer Rights Law Firm, PLLC
133 Main Street, 2nd Floor
North Andover, MA 01845
Telephone: (978) 212-3300
Facsimile: (888) 712-4458
attorneyderekd@consumerlawfirmcenter.com

**Attorneys for Portus Singapore PTE Ltd
& Portus PTY Ltd**

20